# EXHIBIT E

Filed
12 March 29 P5:21
Gary Fitzsimmons
District Clerk
Dallas District

Cause No. 12-02219

| | | |
|---|---|---|
| SWARTZ & BROUGH, INC., individually and as general partner of ART MORTGAGE NO. II, LTD. ART MORTGAGE NO. III LTD., STOF MORTGAGE, LTD, STOF MORTGAGE NO. 2 LTD, JOE MORTGAGE NO. II, LTD., TENN MORTGAGE NO. 2 LTD., HILLMOR PARTNERS, LTD., | § § § § § § § § § § | IN THE DISTRICT COURT |
| Plaintiff. | § § | |
| v. | § § § | DALLAS COUNTY TEXAS |
| TWIN CAPITAL GROWTH, LTD., HARDY HULVER FIELDS, H-GROUP II, LTD., GREG GREENBERG, MARK DAKE, TR MORTGAGE, LTD., STEVENS & TULL OPPORTUNITY FUND I, LTD., STEVENS & TULL OPPORTUNITY FUND II, LTD., THE DE COMPIEGNE PROPERTY NO. 20, LTD., J.Y. ROBB III, JOHN KEITH RODGERS, WILLIAM LOWERY, ADAM WAGNER, ERIC CRISLER, WEST PROPERTIES II, LLC and STUART WEST | § § § § § § § § § § § § § § § § | |
| Defendant. | § | 162nd JUDICIAL DISTRICT |

## SECOND AMENDED ORIGINAL PETITION

COMES NOW, Swartz & Brough, Inc., individually and as general partner of ART MORTGAGE NO. II, LTD., ART MORTGAGE NO. III LTD., STOF MORTGAGE, LTD, STOF MORTGAGE NO. 2 LTD, JOE MORTGAGE NO. II, LTD., TENN MORTGAGE NO. 2 LTD. and HILLMOR PARTNERS, LTD., the Plaintiff herein files this its Second Amended Original Petition against Defendants Twin Capital Growth, Ltd., Hardy Hulver Fields, H-Group

II, Ltd., Greg Greenberg, Mark Dake, TR Mortgage, Ltd., Stevens & Tull Opportunity Fund II, Ltd., The DE Compiegne Property No. 20, Ltd., J. Y. Robb II, John Keith Rodgers, William Lowery, Adam Wagner, Eric Crisler, West Properties II, LLC and Stuart West, respectfully shows the Court the following:

I.

PARTIES

1. Plaintiff Swartz & Brough, Inc. ("SBI" or "Plaintiff") is a Texas corporation whose principal place of business is located at 14801 Quorum Drive, Suite 170, Dallas, Texas 75254. SBI is the general partner of the following limited partnerships:

    a. ART Mortgage No. II, Ltd. ("ART 2"),

    b. ART Mortgage No. III, Ltd. ("ART 3"), a Texas limited partnership;

    c. STOF Mortgage, Ltd. (STOF"), a Texas limited partnership;

    d. STOF Mortgage No. 2 Ltd. ("STOF 2"), a Texas limited partnership

    e. JOE Mortgage No. II, Ltd. ("JOE 2"), a Texas limited partnership;

    f. TENN Mortgage No. 2 Ltd. ("TENN 2"), a Texas limited partnership; and,

    g. HillMor Partners Ltd ("HILLMOR"), a Texas limited partnership.

Collectively, ART 2, ART 3, STOF, STOF 2, Joe 2, TENN 2 and HILLMOR are referred to as the "LPs").

2. Defendant Twin Capital Growth, Ltd. Is a Texas limited partnership that may be served through service on its General Partner, AWF Capital Management Company, LLC, at 5800 Coit Rd., Suite 400, Plano, Texas 75023.

3. Defendant Hardy Hulver Fields is an individual resident of the State of Texas who may be served at 2929 Galloway #115, Mesquite, Texas 75150.

4. Defendant H-Group II is a Texas General Partnership which may be served at its business address, 1800 S. Washington, Suite 215, Amarillo, Texas 79102.

5. Defendant Greg Greenberg is an individual resident of the State of Texas who may be served at 8510 Abrams, Suite 518, Dallas, Texas 75243.

6. Defendant Mark Dake is an individual resident of the State of Missouri who may be served at 1710 W. Broadway, West Plains, Missouri 65775-2246.

7. Defendant The de Compiegne Property No. 20, Ltd. Is a Texas limited partnership which may be served by service on its General Partner at 550 W. Texas Ave., Suite 1102, Midland, Texas 79701.

8. Defendant Stevens & Tull Opportunity Fund I, Ltd. May be served by service upon its general partner at its business address, 3300 N. "A" Street, Building 2, Suite 102, Midland, Texas 79705.

9. Defendant Stevens & Tull Opportunity Fund II, Ltd. May be served by service upon its general partner at its business address, at 3300 N. "A" Street, Building 2, Suite 102, Midland, Texas 79705.

10. TR Mortgage, Ltd. Is a Tennessee limited partnership which may be served through service on its Registered Agent, Registered Agent Solutions, Inc., 505 Congress Avenue, Suite 2300, Austin, Texas 7871.

11. Defendant J.Y. Robb III is an individual resident of the State of Texas who may be served at 6454 Mimosa, Dallas, Texas 75230.

12. Defendant John Keith Rodgers is an individual resident of the State of Texas who may be served wherever he may be found.

13. Defendant William Lowery is an individual resident of the State of Illinois who may be served at 180 Firth Road, Inverness, Illinois 60067.

14. Defendant Adam Wagner, Trustee of the Lucy Isabel Wagner Trust, is an individual resident of the State of Texas who may be served at 2630 Exposition Blvd., Suite 120, Austin, Texas 78703.

15. Defendant Eric Crisler is an individual resident of the State of Texas who may be served at 1508 W. 30th Street, Austin, Texas 78703.

16. Defendant West Properties II, LLC is a Texas limited liability company that may be served by service on its manager, Stuart West, at 1102 W. Interstate 40, Amarillo, Texas 79102.

17. Defendant Stuart West is the manager of West Properties II, LLC who may be served at 1102 W. Interstate 40, Amarillo, Texas 79102.

## II.

## JURISDICTION, VENUE AND DISCOVERY

18. The Court has jurisdiction over this cause and the Defendants: (a) pursuant to the Texas Constitution, Article V, Section 8; (b) because Defendants are either Texas residents or have done and/or engaged in business in the State of Texas and/or have had minimum contacts with the State of Texas including entering into limited partnership agreements and other written contracts in the State of Texas, including among others, limited partnership agreement with Texas residents and adopting Texas law, such that the maintenance of this lawsuit in the State of Texas does not offend traditional notions of fair play and substantial justice; and (c) because the amount in controversy is within the Court's jurisdiction limit.

19. Venue is proper in Dallas County, Texas pursuant to Texas Civil Practices & Remedies Code section 15.002(a)(1)(2) because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County, Texas and Dallas County is the County of residence of certain of the Defendants. Pursuant to Texas Civil Practices & Remedies Code section 15.005 this court has venue for all defendants in claims or action arising out of the same transaction, occurrence, or service of transitions or occurrences. Discovery shall be conducted under Level 3 of Tex.R.Civ.P. 190.

## III.

## BACKROUND FACTS

20. On or about September 6, 2001, SBI and Defendants Twin Capital Growth, Ltd., Hardy Hulver Fields, J.Y. Robb, Jr. Estate Partnership and Bennett Robb entered into an Agreement of Limited Partnership (an "LP Agreement"), forming ART 2. On September 12, 2008 the J.Y. Robb, Jr. Estate Partnership and Bennett Robb both withdrew as limited partners in ART 2. SBI is and was at all relevant times the manager and General Partner of ART 2. A true and correct copy of the ART 2 LP Agreement is attached hereto as <u>Exhibit 1</u> and incorporated by reference as if fully set forth herein.

21. On or about May 30, 2007, SBI and Defendants Twin Capital Growth, Ltd., H-Group II, Hardy Hulver Fields, Greg Greenberg and Mark Dake entered into an LP Agreement, forming ART 3. SBI is and was at all relevant times the manager and General Partner of ART 3. A true and correct copy of the ART 3 LP Agreement is attached hereto as <u>Exhibit 2</u> and incorporated by reference as if fully set forth herein.

22. On or about March 31, 2004, SBI and Defendant Stevens & Tull Opportunity Fund I, L.P. entered into an LP Agreement, forming STOF. SBI is and was at all relevant times

the manager and General Partner of STOF. A true and correct copy of the STOF LP Agreement is attached hereto as Exhibit 3 and incorporated by reference as if fully set forth herein.

23. On or about September 28, 2006, SBI and Defendant Stevens & Tull Opportunity Fund II, Ltd. entered into an LP Agreement, forming STOF 2. SBI is and was at all relevant times the manager and General Partner of STOF 2. A true and correct copy of the STOF 2 LP Agreement is attached hereto as Exhibit 4 and incorporated by reference as if fully set forth herein.

24. On or about January 15, 2002, SBI and Defendant The de Compiegne Property No. 20, Ltd. entered into an LP Agreement, forming JOE 2. SBI is and was at all relevant times the manager and General Partner of JOE 2. A true and correct copy of the JOE 2 LP Agreement is attached hereto as Exhibit 5 and incorporated by reference as if fully set forth herein.

25. On or about August 25, 2004, SBI and Defendants The de Compiegne Property No. 20, Ltd. and TR Mortgage, Ltd. entered into a LP Agreement, forming TENN 2. SBI is and was at all relevant times the manager and General Partner of TENN 2. A true and correct copy of the TENN 2 LP Agreement is attached hereto as Exhibit 6 and incorporated by reference as if fully set forth herein.

26. On or about February 26, 2003, SBI and Defendants J.Y. Robb III, Twin Capital Growth, Ltd., Hardy Fields, Donna Edwards, Andrew Swartz, Bill Lowery, Adam Wagner, and Eric Crisler entered into a LP Agreement, forming HILLMOR. John K. Rodgers succeeded Donna Edwards in 2006. Mark Brough was also an initial limited partner, but his interest was subsequently purchased by SBI. SBI is and was at all relevant times the manager and General Partner of HILLMOR. A true and correct copy of the HILLMOR LP Agreement is attached hereto as Exhibit 7 and incorporated by reference as if fully set forth herein.

27. Each of the LP Agreements referenced above (collectively the "LP Agreements") contains the following provision or a provision to the same effect (the "Reimbursement Clause"):

> Section 5.5   Reimbursement of General Partner.
>
> The Partnership may not pay the General Partner, as a Partnership expense, a management-fee to compensate for its time expended in conducting the business and affairs of the Partnership. The Partnership shall pay or reimburse to the General Partner, as a Partnership expense, all reasonable direct and, indirect costs and expenses incurred by the General Partner in organizing the Partnership and in managing and conducting the business and affairs of the Partnership, including, (i) travel expenses, (ii) legal and accounting costs and expenses and (iii) expenses incurred in providing or obtaining such other professional, technical, administrative services and advice as the General Partner may deem necessary or desirable. The General Partner shall determine which expenses are allocable to the Partnership in a manner which is fair and reasonable to the General Partner and the Partnership, and if such allocation is made by the General Partner in good faith it shall be conclusive in the absence of manifest error.

28. The LP Agreements also provide that SBI, as General Partner, may, inter alia,

> use the assets of the partnerships (including, without limitation, cash on hand) for any purposes and upon any terms as it sees fit, including, without limitation to, the financing of operations of the partnership...the only limitation of the aforementioned powers being that a liquidation of over 50% of the total assets of the Partnership shall require approval of a Majority Interest of the Limited Partners.

LP Agreements, § 5.1 (iv).

29. For many years, SBI, as General Partner of each of the LPs, charged to the LPs only direct expenses and a small additional overhead cost. It was generally understood and communicated at various times that SBI intended to recover any additional costs from its share of profits.

30. Beginning in 2010, there were no profits in most or all of the LPs. The language of the Reimbursement Clause had not been implemented as to indirect costs. Andrew Swartz ("Swartz") negotiated with each of the LPs to cover their respective shares of expenses based

upon a $100,000 per month assumed cost ratably divided among the LPs on the basis of assets under management.

31. The LPs agreed to this arrangement, but pressed for concessions by SBI in consideration of their willingness to pay.

32. At almost the same time as the reimbursement arrangements with the LPs were completed, SBI retained advisors to advise it in the face of severe financial hardship. In early June, SBI's advisors read the LP Agreements and noted the Reimbursement Clause. Subsequently, meetings were held with various of the limited partners in the LPs (collectively, the "Partner Defendants") during which the Reimbursement Clause was explained to them.

33. The Partner Defendants have not, in the two subsequent years, formally challenged the validity and applicability of the Reimbursement Clause.

34. Two different auditors have found the Reimbursement Clause to be clear and unambiguous and so noted in their audit reports.

35. On the other hand, certain of the Partner Defendants have expressed concerns about the size of the expense reimbursements they have been required to pay.

36. SBI has made good faith efforts to reduce costs, even to the point of offering to absorb a large portion of those costs itself. Oddly, many of the Partner Defendants responded in anger, demanding to know why this had not been done sooner. The Partner Defendants in ART 2 and ART 3 retained counsel and have sent a forensic examiner to SBI to examine the ART 2 and ART 3 books and records. SBI welcomed the forensic examiner.

37. Certain of the Partner Defendants in STOF and STOF 2 have demanded that partnership assets be distributed. SBI has declined to distribute those assets to that group. SBI's refusal is based in part on the terms of the STOF and STOF 2 LP Agreements and in part on the

fact that the group demanding the assets lacks the capability to manage them or even liquidate them in a commercially reasonable manner. SBI has no obligation to make the requested distributions and believes that it cannot make such distributions commensurate with its fiduciary duties.

38. Furthermore, some of the actions presently being taken by the General Partners of the sole Partner Defendants of STOF and STOF 2 with regard to certain previously distributed assets appear to potentially be illegal. There are significant apparent conflicts of interests in their arrangements. They have refused or stalled on numerous specific written requests for information (the Partner Defendants in question are themselves limited partnerships, of which SBI is a member and therefore entitled to information).

39. Until late 2011, SBI could not reasonably calculate or allocate expenses from any years prior to 2010. However, by the end of the fourth quarter of 2011 SBI had completed a thorough review and correction process, and now has full confidence in the accuracy of its accounting records.

40. In December 2011, two important factors caused SBI to reconsider implementing the Reimbursement Clause as to indirect expenses: (i) the negative response of the Partner Defendants to SBI's good faith efforts to cut costs; and (ii) the fact that the Partner Defendants were now demanding repayment of significant balances in the intercompany account (the "ICA") maintained by SBI. At the time, these balances appeared to be heavily in the Defendants' favor.

41. The ICA is a large due from/due to account through which were run all of the various kinds of transactions between SBI, as the LPs' General Partner, and the Partner Defendants.

42. SBI carefully examined the ICA in the course of its accounting review and has found nothing improper in it. In addition, upon information and belief, the forensic accountant sent by ART 2 and ART 3 in December 2011, and upon information and belief, found nothing inaccurate or improper. That forensic examiner returned to re-examine the ICA on Tuesday February 28, 2012.

43. SBI initially tried to address the demands of the Partner Defendants for repayment of the balances in the ICA by offering payout over time in the form of notes. While SBI has the authority to create the notes on behalf of each of the LPs, given the sensitive nature of the transaction and the potential conflict of interests, SBI communicated with the Partner Defendants and asked them to approve the creation of the proposed notes.

44. With two exceptions, the Partner Defendants ignored or outright rejected the proposal. SBI lacked (and lacks) the wherewithal to rapidly repay the ICA balances as stated in its 2011 financial statements. However, the ICA balances were open to question because while they accurately reflect the sums owed to the Defendants at any point in time, they did not reflect the unbilled expense reimbursements owed by the Defendants to SBI from prior years because such amounts had not been billed.

45. Late in 2011, SBI sought to determine what amounts were owed to SBI for indirect expenses under the Reimbursement Clause, and to the extent possible to assess the ramifications of charging them in early 2012.

46. SBI performed an extensive and careful preliminary review. By mid-December 2011, SBI had ascertained the following:

    a. The net balance of unbilled reimbursements for indirect expenses in 2008 NS 2009 could amount to as much as $3.9 million;

b. These amounts could not be recognized as income or balance sheet adjustments in the current year, but would have to be recognized as adjustments to the prior years in which the reimbursements would have been made, had they been billed;

c. There would be income tax consequences of an uncertain magnitude;

d. The income taxes on these amounts would be due regardless of whether or not the LP Defendants were billed, because the IRS would simply impute the income to the prior years and then assess tax, penalties and interest.

47. Given this information, in late December 2011, SBI determined to (i) bill the LPs for the years 2008 and 2009, with the actual execution to take place as soon as a thorough review of the potential charges could be completed and (ii) estimate SBI's probable income tax liability for the changes. SBI may also seek to charge for unbilled indirect expenses in earlier years as well.

48. Upon final analysis, SBI has determined that the total value of the unreimbursed 2008 and 2009 indirect costs is $3,534,866. SBI divided this cost among the LPs and itself as shown on Table A, attached hereto as Exhibit 8.

49. As a limited partner in certain of the Partner Defendants (two of which are themselves limited partnerships), SBI will be affected by the application of the Reimbursement Clause to indirect expenses in the same fashion in as the Defendants.

50. SBI estimates that applying the Reimbursement Clause to recover 2008 and 2009 indirect expenses will probably cause a tax liability (including penalties and interest) of approximately $1,500,000. This liability may be reduced to $1,000,000 by the carry back of losses sustained in 2011.

51. The income tax, penalties and interest estimated are not caused by charging the LPs for the unreimbursed expenses. SBI believes that the IRS will likely audit SBI based upon its amended returns, and that that IRS will take the position the tax has always been due because the sums were payable to and collectable by SBI and SBI simply chose not to collect them.

52. SBI was unaware of the tax exposure until December 2011. SBI's and the LPs' former auditors and tax advisors failed for several consecutive years to note that the Reimbursement Clause existed and had any effect at all. Even when the Reimbursement Clause was called the prior auditor's attention by SBI in 2010, causing them to footnote it in the 2009 audit, they did not inquire into it or make any allowance for its effects either in the 2009 audit or in the tax return subsequently prepared by them for SBI.

53. On March 22, 2012, Twin Capital Growth, Ltd, and Hardy Hulver Fields signed a resolution purporting to appoint West Properties II, LLC as "Managing Partner" of ART 2. Further, on March 22, 2012, Twin Capital Growth, Ltd., H-Group II, Hardy Hulver Fields, Greg Greensberg and Mark Dake signed a resolution purporting to appoint West Properties II, LLC as "Managing Partner" of ART 3. On March 26, 2012, West Properties II, LLC ("West Properties") claimed to be managing partner of ART 2 and ART 3 and began conducting activities as if it were the Managing Partner. Stuart West ("West") is the sole actor for West Properties. West Properties is not a partner of either ART 2 or ART 3 and cannot act as Managing Partner of these entities by either the terms of the partnership agreements or the Texas Business Organizations Code. Therefore, these limited partners have breached the partnership agreements for ART 2 and ART 3. By failing to act with proper consent and authority and without full and adequate knowledge of the business activities of ART 2 and ART 3, West Properties and West have jeopardized the business affairs and business of ART 2 and ART 3. West has interfered with

SBI's contractual relationships. SBI hereby sues for its proximately caused damages as general partner of ART 2 and ART 3.

## IV.

## CAUSES OF ACTION

### COUNT ONE - Request for Declaratory Relief

54. Plaintiff repeats and re-alleges each of the foregoing allegations above as if fully set forth at length herein.

55. The allegations set forth above constitute a justiciable controversy. Plaintiff is interested under the LP Agreements whose rights, status or other legal relations are affected by those contracts. Pursuant to Texas Civil Practice & Remedies Code § 37.001 et seq., Plaintiff requests the Court to enter a Declaratory Judgment declaring its rights with respect to the LP Agreements and, in whole or in part, one or more of the following:

a. The reimbursement of indirect expenses made by SBI through its agents and representatives in February 2012 through adjustments to the ICA were proper under the terms of the LP Agreements;

b. Any tax liability that may be found would exist regardless of whether or not SBI charged the indirect expenses to the LPs;

c. Plaintiff's use of funds advanced by the Defendants and accounted for using the ICA was proper and in accordance with the LP Agreements;

d. Plaintiff's actions as alleged above are authorized by the LP Agreements; and

e. any other necessary and appropriate relief regarding the parties' rights, status, and legal relations regarding the LP Agreements, SBI and the Partner Defendants and other matters relating thereto.

56. Plaintiff seeks these declarations in order to afford it relief from the uncertainty with respect to its rights, status, and legal relations respecting the LP Agreements, and other matters related thereto.

57. Plaintiff has retained the services of Kane Russell Coleman & Logan PC, licensed attorneys, to enforce its rights and protect its legal interests and has agreed to pay Kane Russell Coleman & Logan PC for reasonable and necessary attorneys' fees and expenses. Plaintiff is entitled to its reasonable and necessary attorneys' fees and expenses pursuant to Texas Civil Practice and Remedies code § 37.009, and other applicable law, and Plaintiff seeks recovery of same from the Defendants.

## COUNT TWO – Breach of Fiduciary Duty and Breach of Partnership Agreements

58. Twin Capital Growth, Ltd., H Group II, Hardy Hulver Fields, Greg Greenberg, and Mark Dake have breached their fiduciary duties and the terms of the Partnership agreements owed to SBI and ART 2 and ART 3. SBI hereby sues for all proximately caused damages as may be determined at trial.

## COUNT THREE – Tortious Interference with Partnership Agreements and with Partnership business

59. West Properties and West have tortiously interfered with the ART 2 and ART 3 Partnership Agreements and business relationships and contracts of SBI. SBI hereby sues for all proximately caused damages as may be determined at trial.

WHEREFORE, PREMISES CONSIDERED Plaintiff prays as follows:

1) The entry of declaratory judgment as prayed;

2) Judgment for its attorneys' fees, costs and lawful prejudgment and post judgment interest; and

3) General and special relief as allowed by law.

Respectfully submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**

/s/ Robert N. LeMay
Robert N. LeMay
State Bar No. 12188750
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Tel: (214) 777-4200
Fax: (214) 777-4299

**ATTORNEYS FOR PLAINTIFF SWARTZ & BROUGH, INC.**

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the foregoing document was served on all counsel of record on the 29th day of March, 2012 as follows:

Michael W. Stockham
Michael.stockham@tklaw.com
Timothy R. McCormick
Timothy.mccormick@tklaw.com
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:   214-969-1700
Facsimile:   214-969-1751

Mark Sales
Dykema Law firm
1717 Main Street
Suite 4000
Dallas, Texas 75201
Telephone:   214-462-6451
Facsimile:   214-462-6401

Clint R. Latham
David Mullin
MULLIN HOARD & BROWN LLP
500 South Taylor, Suite 800
PO Box 31656
Amarillo, Texas 79120-1656
(806) 372-5050
(806) 372-5086 (Facsimile)

Chad Farrar
Greg Dimmick
2911 Turtle Creek Blvd., Suite 880
Dallas, Texas 75219
(214) 754-0040
(214) 754-0043 (Facsimile)

/s/ Robert N. LeMay
Robert N. LeMay