# EXHIBIT G

IN THE 181st DISTRICT COURT
POTTER COUNTY, TEXAS

| | |
|---|---|
| ART MORTGAGE NO. II, LTD. and<br>ART MORTGAGE NO. III, LTD., § § § § §<br>*Plaintiffs*, § §<br>v, § § §<br>SWARTZ & BROUGH, INC. and § §<br>ANDREW SWARTZ, § §<br>*Defendants*. § | Cause No. 100491-B  |

## PLAINTIFFS' FIRST AMENDED PETITION AND REQUEST FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiffs Art Mortgage No. II, Ltd. and Art Mortgage No. III, Ltd. file this Original Petition against Defendants Swartz & Brough, Inc. and Andrew Swartz.

### I. Discovery Plan

1. Plaintiffs intend to conduct discovery under a Level II Discovery Control Plan in accordance with Rule 190.3 of the Texas Rules of Civil Procedure.

### II. Parties

2. Plaintiff Art Mortgage No. II, Ltd. (Art II) is a Texas limited partnership with its principal office in Amarillo, Texas.

3. Plaintiff Art Mortgage No. III, Ltd. (Art III) is a Texas limited partnership with its principal office in Amarillo, Texas.

4. Defendant Swartz & Brough, Inc. ("SBI") is a Texas corporation with its principal place of business at 14801 Quorum Drive, Suite 170, Dallas, Texas 75254, where process may be served on its president, Andrew Swartz, or its vice president, Ron Lilley.

1

5. Defendant Andrew Swartz ("Swartz") is an individual resident of Texas who may be served with process at his place of business located at 14801 Quorum Drive, Suite 170, Dallas, Texas 75254.

### III. Background

6. Art II and Art III ("the Partnerships") were formed on or about September 6, 2001, and May 30, 2007, respectively. The stated business of the Partnerships was "(a) to purchase Loans at their Adjusted Cost, (b) to hold such Loans for investment and for the production of income, (c), to borrow funds in the manner set forth herein to enable the Partnership to purchase Loans and (d) to engage in or perform any and all acts or activities that are related or incident to the foregoing and that may be lawfully conducted by a partnership." Until immediately before the filing of this lawsuit, SBI served as the Managing Partner of the Partnerships.[1] Swartz is and always has been the president and chief executive of SBI, and in that capacity has been the individual in control of the affairs of the Partnerships.

7. In administering SBI's duties as Managing Partner of the Partnerships, Swartz acquired assets in SBI's name using the Partnerships' funds. These funds came from lines of credit maintained by the Partnerships with Amarillo banks – Amarillo National Bank in the case of Art III, and FirstBank Southwest in the case of Art II. SBI drew on these lines of credit, deposited the cash into an SBI account, and on numerous occasions used the funds for purposes other than for the stated purposes of the Partnerships and the Loans and for purposes not authorized by the partnership agreements. SBI's and Swartz's misappropriation of partnership assets, in the form of the proceeds of bank loans, totaled over $1.5 million.

---

[1] The current Managing Partner of the Partnerships is West Properties II, LLC. The governing partnership agreements confer upon the Managing Partner authority to direct and exercise full control over all activities of the Partnerships.

2

8. On information and belief, plaintiffs allege that the misappropriated funds were used to acquire, enhance or maintain assets for SBI or other persons and entities, and were of no benefit to the Partnerships. In order to cover up the misappropriation of fiduciary property, SBI and Swartz later directed that the misappropriations be set up as an intercompany liability between SBI and the Partnerships, and also attempted to cover the misappropriations with promissory notes reflecting the supposed amount of the misappropriations and promising repayment on terms favorable to SBI. On some occasions, SBI and Swartz would give an asset (such as a loan or house) back to the Partnerships and record a supposed decrease in the intercompany liability. This process continued for some time.

9. As the real estate market continued its well-documented decline, the business of the Partnerships suffered, and Swartz and SBI quit putting assets back to the Partnerships and/or unfairly allocated bad assets to the Partnerships and good assets to other entities in which Swartz and SBI had an interest. In other words, SBI and Swartz took money from the Partnerships and used it for the benefit of other entities or projects in which they were involved to the detriment of the Partnerships. The result was an ever-increasing intercompany liability owed to the Partnerships that Swartz and SBI were either unwilling or unable to repay. Needless to say, these actions were not authorized by the partnership agreements or the limited partners.

10. As the limited partners of the Partnerships began to question SBI's use of partnership funds and eventually retained an accounting expert to examine the books of the Partnerships, SBI suddenly and fraudulently charged supposed previously-incurred overhead expenses to the Partnerships. The majority of these adjustments related to years for which SBI had already reported to the IRS based on the historical intercompany allocations.[2] And some of

---

[2] SBI recently sent the limited partners amended K-1s for the 2008 tax year reflecting the tax impact of these retroactive adjustments and was likely planning to issue amended K-1s for 2009 and 2010 as well.

the adjustments included retroactive intercompany allocations that had never been charged by SBI in preceding years. These adjustments purported to drastically reduce the amount owed to the Partnerships. SBI also fraudulently reduced the intercompany liability owed to Art III for $10,000 paid to SBI's attorney for the purpose of filing a declaratory judgment suit in Dallas on behalf of SBI against the limited partners ("the Dallas Lawsuit"). In other words, SBI used Art III money to sue its limited partners.

11. SBI and Swartz have refused to repay the Partnerships for the misappropriated funds.

12. On March 22, 2012, the limited partners of the Partnerships voted unanimously to remove SBI as Managing Partner of the Partnerships and install West Properties II, LLC ("WP") in that capacity. This action was and is specifically authorized by Section 5.1(a) of the partnership agreements which provides as follows: "The Managing Partner may be removed and replaced from time to time by the vote of seventy-six percent (76%) of the Limited Partners." The partnership agreements place no restrictions upon who the limited partners may appoint as Managing Partner. Notice of this move by the limited partners was delivered to SBI's attorney on March 26, 2012.

13. Initially, SBI was eager to transition management of the Partnerships to WP. In fact, SBI's attorney urged that the transition occur quickly and that WP come to Dallas on March 29 to meet with SBI representatives to obtain files and records so that WP could immediately take over pending matters, including imminent foreclosure proceedings. WP representatives made plane reservations accordingly. Then, at approximately 7:00 p.m. on March 28, SBI's attorney sent a letter to the undersigned counsel advising that SBI was now questioning the appointment of WP as Managing Partner and thus would not transition management of the

4

Partnerships to WP until certain issues were resolved. The letter also enclosed a draft amended petition in the Dallas lawsuit threatening to sue WP and its principal, Stuart West, for breach of fiduciary duty and breach of the partnership agreements in connection with WP's appointment as Managing Partner. SBI filed the amended petition in Dallas on March 29.

14. SBI's primary challenge to WP's appointment as Managing Partner is that the partnership agreements state that the Managing Partner is also the Tax Matters Partner and, according to the Internal Revenue Code, the Tax Matters Partner must be a general partner. And since SBI is the sole general partner of the Partnerships, SBI contends that only it can be the Tax Matters Partner and, correspondingly, the Managing Partner. In other words, SBI has twisted the partnership agreements into prohibiting the limited partners from removing and replacing the Managing Partner as they are explicitly permitted to do under Section 5.1(a) the partnership agreements. This deliberate interference with the rights of the limited partners under the partnership agreements requires immediate intervention from the Court, particularly given SBI's misappropriation of partnership funds.

### IV. Cause of Action – Breach of Fiduciary Duty

15. The Partnerships incorporate paragraphs 6-14 into this cause of action.

16. As the Managing Partner of the Partnerships, SBI and its controlling shareholder, Swartz, owed the Partnerships and the limited partners a fiduciary duty. By taking partnership funds and diverting them to other entities without authority, and covering up the misappropriations with various accounting entries and promissory notes, SBI and Swartz breached this duty and damaged the Partnerships in an amount to be proved at trial. In addition, the Partnerships are entitled to a constructive trust and/or equitable lien in their favor on all property purchased, enhanced, or maintained, in whole or in part with their money. By letter

5

dated November 16, 2011, attached hereto as Exhibit A, counsel for the limited partners demanded that S&B:

1. Repay or transfer back immediately all money or property of ART Mortgage No. III, LTD., that you, Swartz & Brough, Inc., on any other person acting with your knowledge or consent, has stolen, converted, embezzled, "borrowed", misappropriated, or misapplied since the inception of the partnership.

2. Provide a full and complete accounting with all supporting documentation attached showing all such acts of theft, conversion, embezzlements, "borrowings", misappropriations, or misapplications or misapplications of money or property of ART Mortgage No. III, LTD., and describing in detail how such partnership money and property was used, stating whether that money or property or its proceeds (in any tangible or intangible form) is currently in possession or control of any person or entity known or with reasonable diligence knowable to you, and if so, giving full details regarding the current identity of the person or entities holding the money or property taken from ART Mortgage No. III, LTD., and the location of such money or property. In particular, if any money or property of ART Mortgage No. III, LTD. has been used to purchase, repair, improve, retire debt on or otherwise benefit properties owned by Swartz & Brough or any other entity, we demand that you immediately identify all such properties by address and record owner, and specifically identify the dates, amounts and purposes of such uses of the funds or property of ART Mortgage No. III, LTD.

3. Comply with the terms of the attached agreement with Amarillo National Bank dated August 20, 2009, signed by you (which you appear to attempt to repudiate in the email from your CPA, Wesley A. Tucker, to Amarillo National Bank dated November 10, 2011).

4. Pay in full the indebtedness of ART Mortgage No. III, LTD. to the Amarillo National Bank.

5. Preserve and do not destroy, delete, modify or otherwise make more difficult to review or access any or all records relating in any way to the business of ART Mortgage No. III, LTD., including without limitation all electronic data.

S&B and Swartz breached their fiduciary duties by failing to take any of the actions requested by the limited partners and by changing the records of the partnerships.

### V. Cause of Action – Civil Theft

17. The Partnerships incorporate paragraphs 6-14 into this cause of action.

6

18. The actions of SBI and Swartz constitute theft as defined in the Texas Theft Liability Act of Chapter 134 of the Civil Practice and Remedies Code. Moreover, the Partnerships are entitled to have a constructive trust and/or equitable lien in their favor placed on all property purchased, enhanced or maintained in whole or in part with their money.

### VI. Cause of Action – Accounting

19. The Partnerships incorporate paragraphs 6-14 into this cause of action.

20. The Partnerships are entitled to and demand an accounting of the use of all partnership funds, including but not limited to funds drawn on loans from Amarillo National Bank and FirstBank Southwest in Amarillo.

### VII. Cause of Action – Injunctive Relief

21. The Partnerships incorporate paragraphs 6-14 into this cause of action.

22. The Partnerships have no adequate remedy at law for SBI's interference with WP's effort to assume the role of Managing Partner. Unless SBI and Swartz are enjoined from continued interference with WP acting as managing partner, the Partnerships' complex real estate and note operations will be thrown into confusion due to SBI and Swartz creating confusion regarding who has authority to act. Additionally, plaintiffs will be subjected to the continued danger of more misappropriation of funds and accounting violations. Moreover, the right to remove and replace the Managing Partner cannot be quantified, and thus the Partnerships will be irreparably harmed if WP is prevented from assuming the role of Managing Partner.

### VIII. Prayer

For these reasons, plaintiffs request that the Court enter a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against SBI and Swartz (1) prohibiting them from interfering with WP's efforts to assume the role of Managing Partner and take over

management of the Partnerships and (2) ordering them to immediately turn over to WP all books, files, and records of the Partnerships and to cooperate with WP in its assumption of the role of Managing Partner.

Plaintiffs further request that the Court award plaintiffs damages within the jurisdictional limits of this Court, together with prejudgment and post-judgment interest as allowed by law, costs of court, additional damages, and attorneys' fees as allowed under the Texas Theft Liability Act, exemplary damages, and such other relief to which they are entitled, including an accounting as requested in the November 19, 2011 letter, and a constructive trust and/or equitable lien on property purchased, enhanced, or maintained with the Partnerships' money.

Respectfully submitted,

MULLIN HOARD & BROWN, L.L.P.
David Mullin, No. 14651600
Clint R. Latham, No. 24013009
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
TEL: (806) 372-5050
FAX: (806) 372-5086

*David Mullin*
*Attorneys for Plaintiffs*

8

## VERIFICATION

STATE OF TEXAS )
)
COUNTY OF Potter )

Before me, the undersigned notary, this day appeared Jeff Sumpter, a person whose identity is known to me, who stated under oath that he is a duly authorized representative of H-Group II, a limited partner of Plaintiff Art Mortgage No. III, Ltd., that he has read the factual statements in the foregoing Amended Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and that such statements are true and correct based on his personal knowledge, documents and information received in the ordinary course of Plaintiffs' business, and his investigation of the relevant facts.

Jeff Sumpter

Subscribed and sworn to before me on March 29, 2012.

EMILIE E. DAVIS
Notary Public, State of Texas
My Commission Expires
August 05, 2014

Emilie E. Davis
Notary Public

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, a true and correct copy of the foregoing pleading was served on the following as indicated:

Robert LeMay  Via Fax: (214) 777-4299
*Attorney for Swartz & Brough, Inc.*

*David Mullin*
David Mullin