# EXHIBIT I

IN THE 162nd DISTRICT COURT
DALLAS COUNTY, TEXAS

| | | |
|---|---|---|
| SWARTZ & BROUGH, INC., individually and as general partner of ART MORTGAGE NO. II, LTD., ART MORTGAGE NO. III, LTD., STOF MORTGAGE, LTD., STOF MORTGAGE NO. 2 LTD., JOE MORTGAGE NO. II, LTD., TENN MORTGAGE NO. 2 LTD., HILLMOR PARTNERS, LTD.,<br><br>*Plaintiff,*<br><br>v.<br><br>TWIN CAPITAL GROWTH, LTD., HARDY HULVER FIELDS, H-GROUP II, GREG GREENBERG, MARK DAKE, TR MORTGAGE, LTD., STEVENS & TULL OPPORTUNITY FUND I, LTD., STEVENS & TULL OPPORTUNITY FUND II, LTD., THE DE COMPIEGNE PROPERTY NO. 20, LTD., J.Y. ROBB III, JOHN KEITH RODGERS, WILLIAM LOWERY, ADAM WAGNER, and ERIC CRISLER, WEST PROPERTIES II, LLC, and STUART WEST<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 12-02219 |

## PLEA IN INTERVENTION

Intervenors Art Mortgage No. II, Ltd. and Art Mortgage No. III, Ltd. file this Plea in Intervention against Plaintiff Swartz & Brough, Inc. and Andrew Swartz.

### I. Parties

1.      Intervenor Art Mortgage No. II, Ltd. (Art II) is a Texas limited partnership with its principal office in Amarillo, Texas.

2.      Intervenor Art Mortgage No. III, Ltd. (Art III) is a Texas limited partnership with its principal office in Amarillo, Texas.

1

APR-24-2012 15:59 From:MULLIN HOARD BROWN   806 3716230        To:2147774299         P.3/17

3.      Plaintiff Swartz & Brough, Inc. ("SBI") is a Texas corporation with its principal place of business at 14801 Quorum Drive, Suite 170, Dallas, Texas 75254.  SBI has already appeared in this action.

4.      Andrew Swartz ("Swartz") is an individual resident of Texas who may be served with process at his place of business located at 14801 Quorum Drive, Suite 170, Dallas, Texas 75254.

## II.  Interest of the Intervenors

5.      Intervenors have an interest in the instant suit in that the funds at issue belong to the Intervenors.

## III.  Background

6.      Intervenors Art II and Art III ("the Partnerships") were formed on or about September 6, 2001, and May 30, 2007, respectively.  The stated business of the Partnerships was "(a) to purchase Loans at their Adjusted Cost, (b) to hold such Loans for investment and for the production of income, (c), to borrow funds in the manner set forth herein to enable the Partnership to purchase Loans and (d) to engage in or perform any and all acts or activities that are related or incident to the foregoing and that may be lawfully conducted by a partnership." Until March 22, 2012, SBI served as the Managing Partner of the Partnerships.[1]  Swartz is and always has been the president and chief executive of SBI, and in that capacity has been the individual in control of the affairs of the Partnerships.

7.      In administering SBI's duties as Managing Partner of the Partnerships, Swartz acquired assets in SBI's name using the Partnerships' funds.  These funds came from lines of credit maintained by the Partnerships with Amarillo banks – Amarillo National Bank in the case

---

[1] The current Managing Partner of the Partnerships is West Properties II, LLC.  The governing partnership agreements confer upon the Managing Partner authority to direct and exercise full control over all activities of the Partnerships.

2

of Art III, and FirstBank Southwest in the case of Art II. SBI drew on these lines of credit, deposited the cash into an SBI account, and on numerous occasions used the funds for purposes other than for the stated purposes of the Partnerships and the Loans and for purposes not authorized by the partnership agreements. SBI's and Swartz's misappropriation of partnership assets, in the form of the proceeds of bank loans, totaled over $1.5 million.

8.     On information and belief, the misappropriated funds were used to acquire, enhance or maintain assets for SBI or other persons and entities, and were of no benefit to the Partnerships. In order to cover up the misappropriation of fiduciary property, SBI and Swartz later directed that the misappropriations be set up as an intercompany liability between SBI and the Partnerships, and also attempted to cover the misappropriations with promissory notes reflecting the supposed amount of the misappropriations and promising repayment on terms favorable to SBI. On some occasions, SBI and Swartz would give an asset (such as a loan or house) back to the Partnerships and record a supposed decrease in the intercompany liability. This process continued for some time.

9.     As the real estate market continued its well-documented decline, the business of the Partnerships suffered, and Swartz and SBI quit putting assets back to the Partnerships and/or unfairly allocated bad assets to the Partnerships and good assets to other entities in which Swartz and SBI had an interest. In other words, SBI and Swartz took money from the Partnerships and used it for the benefit of other entities or projects in which they were involved to the detriment of the Partnerships. The result was an ever-increasing intercompany liability owed to the Partnerships that Swartz and SBI were either unwilling or unable to repay. Needless to say, these actions were not authorized by the partnership agreements or the limited partners.

3

10.   As the limited partners of the Partnerships began to question SBI's use of partnership funds and eventually retained an accounting expert to examine the books of the Partnerships, SBI suddenly and fraudulently charged supposed previously-incurred overhead expenses to the Partnerships. The majority of these adjustments related to years for which SBI had already reported to the IRS based on the historical intercompany allocations.[2] And some of the adjustments included retroactive intercompany allocations that had never been charged by SBI in preceding years. These adjustments purported to drastically reduce the amount owed to the Partnerships. SBI also fraudulently reduced the intercompany liability owed to Art III for $10,000 paid to SBI's attorney for the purpose of filing the instant lawsuit on behalf of SBI against the limited partners. In other words, SBI used Art III money to sue its limited partners.

11.   By letter dated November 16, 2011, attached hereto as Exhibit A, counsel for the limited partners demanded that S&B:

1.   Repay or transfer back immediately all money or property of ART Mortgage No. III, LTD., that you, Swartz & Brough, Inc., on any other person acting with your knowledge or consent, has stolen, converted, embezzled, "borrowed", misappropriated, or misapplied since the inception of the partnership.

2.   Provide a full and complete accounting with all supporting documentation attached showing all such acts of theft, conversion, embezzlements, "borrowings", misappropriations, or misapplications or misapplications of money or property of ART Mortgage No. III, LTD., and describing in detail how such partnership money and property was used, stating whether that money or property or its proceeds (in any tangible or intangible form) is currently in possession or control of any person or entity known or with reasonable diligence knowable to you, and if so, giving full details regarding the current identity of the person or entities holding the money or property taken from ART Mortgage No. III, LTD., and the location of such money or property. In particular, if any money or property of ART Mortgage No. III, LTD. has been used to purchase, repair, improve, retire debt on or otherwise benefit properties owned by Swartz & Brough or any other entity, we demand that you immediately identify all such properties by address and record owner, and specifically identify

---

[2] SBI recently sent the limited partners amended K-1s for the 2008 tax year reflecting the tax impact of these retroactive adjustments and is likely planning to issue amended K-1s for 2009 and 2010 as well.

4

the dates, amounts and purposes of such uses of the funds or property of ART Mortgage No. III, LTD.

     3.    Comply with the terms of the attached agreement with Amarillo National Bank dated August 20, 2009, signed by you (which you appear to attempt to repudiate in the email from your CPA, Wesley A. Tucker, to Amarillo National Bank dated November 10, 2011).

     4.    Pay in full the indebtedness of ART Mortgage No. III, LTD. to the Amarillo National Bank.

     5.    Preserve and do not destroy, delete, modify or otherwise make more difficult to review or access any or all records relating in any way to the business of ART Mortgage No. III, LTD., including without limitation all electronic data.

S&B and Swartz breached their fiduciary duties by failing to take any of the actions requested by the limited partners and by changing the records of the partnerships, and they have refused to repay the Partnerships for the misappropriated funds.

     12.    On March 22, 2012, the limited partners of the Partnerships voted unanimously to remove SBI as Managing Partner of the Partnerships and install West Properties II, LLC ("WP") in that capacity. This action was and is specifically authorized by Section 5.1(a) of the partnership agreements which provides as follows: "The Managing Partner may be removed and replaced from time to time by the vote of seventy-six percent (76%) of the Limited Partners." The partnership agreements place no restrictions upon who the limited partners may appoint as Managing Partner. Notice of this move by the limited partners was delivered to SBI's attorney on March 26, 2012.

     13.    Initially, SBI was eager to transition management of the Partnerships to WP. In fact, SBI's attorney urged that the transition occur quickly and that WP come to Dallas on March 29 to meet with SBI representatives to obtain files and records so that WP could immediately take over pending matters, including imminent foreclosure proceedings. WP representatives

made plane reservations accordingly. Then, at approximately 7:00 p.m. on March 28, SBI's attorney sent a letter to the undersigned counsel advising that SBI was now questioning the appointment of WP as Managing Partner and thus would not transition management of the Partnerships to WP until certain issues were resolved.

14.    SBI's primary challenge to WP's appointment as Managing Partner is that the partnership agreements state that the Managing Partner is also the Tax Matters Partner and, according to the Internal Revenue Code, the Tax Matters Partner must be a general partner. And since SBI is the sole general partner of the Partnerships, SBI contends that only it can be the Tax Matters Partner and, correspondingly, the Managing Partner. In other words, SBI has twisted the partnership agreements into prohibiting the limited partners from removing and replacing the Managing Partner as they are explicitly permitted to do under Section 5.1(a) the partnership agreements. This deliberate interference with the rights of the limited partners under the partnership agreements requires immediate intervention from the Court, particularly given SBI's misappropriation of partnership funds.

### IV. Cause of Action – Breach of Fiduciary Duty

15.    The Partnerships incorporate paragraphs 6-14 into this cause of action.

16.    As the Managing Partner of the Partnerships, SBI and its controlling shareholder, Swartz, owed the Partnerships and the limited partners a fiduciary duty. By taking partnership funds and diverting them to other entities without authority, and covering up the misappropriations with various accounting entries and promissory notes, SBI and Swartz breached this duty and damaged the Partnerships in an amount to be proved at trial. In addition, the Partnerships are entitled to a constructive trust and/or equitable lien in their favor on all property purchased, enhanced, or maintained, in whole or in part with their money.

### V. Cause of Action – Civil Theft

17.    The Partnerships incorporate paragraphs 6-14 into this cause of action.

18.    The actions of SBI and Swartz constitute theft as defined in the Texas Theft Liability Act of Chapter 134 of the Civil Practice and Remedies Code.   Moreover, the Partnerships are entitled to have a constructive trust and/or equitable lien in their favor placed on all property purchased, enhanced or maintained in whole or in part with their money.

### VI. Cause of Action – Accounting

19.    The Partnerships incorporate paragraphs 6-14 into this cause of action.

20.    The Partnerships are entitled to and demand an accounting of the use of all partnership funds, including but not limited to funds drawn on loans from Amarillo National Bank and FirstBank Southwest in Amarillo.

### VII. Cause of Action – Injunctive Relief

21.    The Partnerships incorporate paragraphs 6-14 into this cause of action.

22.    The Partnerships have no adequate remedy at law for SBI's interference with WP's effort to assume the role of Managing Partner.   Unless SBI and Swartz are enjoined from continued interference with WP acting as managing partner, the Partnerships' complex real estate and note operations will be thrown into confusion due to SBI and Swartz creating confusion regarding who has authority to act.   Additionally, plaintiffs will be subjected to the continued danger of more misappropriation of funds and accounting violations.   Moreover, the right to remove and replace the Managing Partner cannot be quantified, and thus the Partnerships will be irreparably harmed if WP is prevented from assuming the role of Managing Partner.

7

## VIII. Prayer

For these reasons, Intervenors request that the Court enter a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against SBI and Swartz (1) prohibiting them from interfering with WP's efforts to assume the role of Managing Partner and take over management of the Partnerships and (2) ordering them to immediately turn over to WP all books, files, and records of the Partnerships and to cooperate with WP in its assumption of the role of Managing Partner.

Intervenors further request that the Court award plaintiffs damages within the jurisdictional limits of this Court, together with prejudgment and post-judgment interest as allowed by law, costs of court, additional damages, and attorneys' fees as allowed under the Texas Theft Liability Act, exemplary damages, and such other relief to which they are entitled, including an accounting as requested in the November 19, 2011 letter, and a constructive trust and/or equitable lien on property purchased, enhanced, or maintained with the Partnerships' money.

Respectfully submitted,

**MULLIN HOARD & BROWN, L.L.P.**
David Mullin, No. 14651600
Clint R. Latham, No. 24013009
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
TEL: (806) 372-5050
FAX: (806) 372-5086

/s/ David Mullin
*Attorneys for Intervenors*

8

## VERIFICATION

STATE OF TEXAS          )
                        )
COUNTY OF Potter        )

  Before me, the undersigned notary, this day appeared Jeff Sumpter, a person whose identity is known to me, who stated under oath that he is a duly authorized representative of H-Group II, a limited partner of Plaintiff Art Mortgage No. III, Ltd., that he has read the factual statements in the foregoing pleading, and that such statements are true and correct based on his personal knowledge, documents and information received in the ordinary course of business, and his investigation of the relevant facts.



_____
Jeff Sumpter

  Subscribed and sworn to before me on April ___24___, 2012.

EMILIE E. DAVIS
Notary Public, State of Texas
My Commission Expires
August 06, 2014

_Emilie E. Davis_
_____
Notary Public

9

APR-24-2012 16:01 From:MULLIN HOARD BROWN   806 3716230        To:2147774299        P.12/17

# Exhibit A

04/24/2012 TUE 15:59 [TX/RX NO 7917] ☑012

APR-24-2012 16:01 From:MULLIN HOARD BROWN   806 3716230        To:2147774299            P.13/17



### MULLIN✦HOARD✦BROWN✦LLP

ATTORNEYS AT LAW

**DAVID MULLIN, PARTNER**

Board Certified in Civil Trial Law
Texas Board of Legal Specialization

Email: dmullin@mhba.com
Direct Dial: (806) 337-1111
Facsimile: (806) 372-5086

November 16, 2011

Andrew M. Swartz, President
Swartz & Brough, Inc., General Partner
ART Mortgage No. III, LTD
2600 VIA Fortuna, Suite 360
Austin, Texas 78746

Re:     ART Mortgage No. III, LTD

Dear Mr. Swartz:

We represent Twin Capital Growth, Ltd., H-Group II, Greg Greenberg and Mark Dake, limited partners in the above-referenced partnership, of which Swartz & Brough, Inc., is general partner. The limited partners have reported to us that you have taken and not repaid or returned money or property of the partnership for purposes other than those stated in Section 1.3 of the Agreement of Limited Partnership, which provides that: "The business of the Partnership shall be (a) to purchase Loans at their Adjusted Cost; (b) to hold such Loans for investment and for the production of income, (c) to borrow funds in the manner set forth herein to enable the Partnership to purchase Loans and (d) to engage in or perform any and all acts or activities that are related or incident to the foregoing and that may be lawfully conducted by a partnership organized pursuant to the Act." On behalf of the limited partners, we hereby demand that Swartz & Brough immediately:

1.    Repay or transfer back immediately all money or property of ART Mortgage No. III, LTD., that you, Swartz & Brough, Inc., on any other person acting with your knowledge or consent, has stolen, converted, embezzled, "borrowed", misappropriated, or misapplied since the inception of the partnership.

2.    Provide a full and complete accounting with all supporting documentation attached showing all such acts of theft, conversion, embezzlements, "borrowings", misappropriations, or misapplications or misapplications of money or property of ART Mortgage No. III, LTD., and describing in detail how such partnership money and property was used, stating whether that money or property or its proceeds (in any tangible or intangible form) is currently in possession or control of any person or entity known or with reasonable diligence knowable to you, and if so, giving full details regarding the current identity of the person or

04/24/2012 TUE 15:59 [TX/RX NO 7917] ☑013

Andrew M. Swartz
November 16, 2011
Page 2

entities holding the money or property taken from ART Mortgage No. III, LTD., and the location of such money or property.  In particular, if any money or property of ART Mortgage No. III, LTD. has been used to purchase, repair, improve, retire debt on or otherwise benefit properties owned by Swartz & Brough or any other entity, we demand that you immediately identify all such properties by address and record owner, and specifically identify the dates, amounts and purposes of such uses of the funds or property of ART Mortgage No. III, LTD.

3.   Comply with the terms of the attached agreement with Amarillo National Bank dated August 20, 2009, signed by you (which you appear to attempt to repudiate in the email from your CPA, Wesley A. Tucker, to Amarillo National Bank dated November 10, 2011).

4.   Pay in full the indebtedness of ART Mortgage No. III, LTD. to the Amarillo National Bank.

5.   Preserve and do not destroy, delete, modify or otherwise make more difficult to review or access any or all records relating in any way to the business of ART Mortgage No. III, LTD., including without limitation all electronic data.

Your actions have caused substantial damages to the partnership and the limited partners, and we intend to pursue all remedies available to the partnership and the limited partners against Swartz & Brough, Inc., you personally, and against all persons acting in concert with you including without limitation, remedies available under the Texas Civil Theft Act, the partnership agreement, conversion, money had and received, breach of fiduciary duties, and the Racketeering Influenced and Corrupt Organizations Act.

With respect to your request for the consent of the limited partners to the sale of partnership assets, there is no such requirement in the partnership agreement. If you believe a sale is in the best interest of ART Mortgage No. III, LTD, you have a responsibility to proceed with it.  We are highly perplexed by your statement that Swartz & Brough has decided not to sell its portfolio.  If Swartz & Brough owns a portfolio of properties, those properties should be used by Swartz & Brough to remedy the losses caused to ART Mortgage No. III, LTD by Swartz & Brough's misconduct by paying the partnership debt at Amarillo National Bank.  All future communications regarding this matter should be to the undersigned.

Respectfully,

David Mullin

David Mullin

Enclosure

V:\Data\Docs\Legal\205\84\00404470.DOC

10/26/2009



## Amarillo National Bank

CRAIG L. SANDERS
EXECUTIVE VICE PRESIDENT

August 20, 2009

Andrew M. Swartz, President
Swartz & Brough, Inc., General Partner
ART Mortgage No. III, LTD
2600 VIA Fortuna Suite 360
Austin, TX 78746

Re:    The certain promissory note made payable by ART Mortgage
No. III, LTD's ("ART") to Amarillo National Bank's ("ANB")
order that is dated June 13, 2008, in the original amount of
$7,500,000,000.00 (the "Note"), as modified by July 13, 2009
Change in Terms Agreement regarding the Note.

Dear Andrew:

As discussed previously, this letter is to set forth ANB's and ART Mortgage No. III,
LTD's ("ART") agreements with respect to the Note, the related pledge of ART's note
receivables, and other loan documents. In that regard, in consideration of ANB's
continued extension of credit under the Note, and of any renewal thereof, ART agrees:

1.    On or before September 13, 2009, as to ART's various note receivables
(which are now evidenced by promissory notes payable to Swartz & Brough, Inc. that are
secured by related deeds of trust), to obtain Swartz & Brough, Inc.'s transfer to ART of the
note receivables and related deed of trust liens – these transfers by Swartz & Brough, Inc.
to ART will be evidenced by Swartz & Brough, Inc.'s execution and delivery to ART as to
each note receivable and related deed of trust of a fully completed Transfer of Note and
Lien utilizing the attached form. In addition, in connection with each such Transfer of
Note and Lien, on or before September 13, 2009, ART agrees to obtain actual physical
possession of the originals of the underlying promissory notes and deeds of trust and to
deliver to ANB each of the completed Transfers of Note and Lien as to each underlying
*promissory note and deed of trust;*

2.    On or before September 13, 2009, as to ART's various note receivables
described above, following Swartz & Brough, Inc.'s execution and delivery to ART of the
described Transfers of Note and Lien and delivery to ART of the underlying promissory
notes and deeds of trust, ART will transfer and assign each such promissory note and deed
of trust to ANB as security for payment of its obligations to ANB, including the Note –
these transfers by ART to ANB will be evidenced by ART's execution and delivery to ANB
as to each note receivable and related deed of trust of a fully completed Collateral Transfer

1

P.O. BOX 1    AMARILLO, TEXAS 79105    806-378-8000

10/26/2009

of Note and Lien utilizing the attached form.  In addition, in connection with each such Collateral Transfer of Note and Lien, ART agrees, on or before September 13, 2009, to deliver to ANB the originals of each of the underlying promissory notes and deeds of trust that are described in the Collateral Transfers of Note and Lien and related Transfers of Note and Lien;

3.    For so long as any obligation remains unpaid to ANB in connection with the Note or otherwise, to provide and continue to provide to ANB, ART's monthly financial statements in a form and of a substance satisfactory to ANB.  In that regard, ART's financial statements that have been previously provided to ANB are in a form and of a substance that is satisfactory to ANB;

4.    For so long as any obligation remains unpaid to ANB in connection with the Note or otherwise, to limit all distributions, payments, or dividends to its general or limited partners (or whatever other interest that may evidence a capital or equity interest in ART) with respect to such interest to an amount equal to less than 50% of ART's annual net income.  That is, ART agrees during such period that at least 50% of its annual net income will be retained; and

5.    To pay all ANB's costs and expenses incurred (including attorneys' fees) in the preparation of this letter or in connection with the negotiation and preparation of any renewal of the Note or of any other related document including the described Transfer of Note and Lien and Collateral Transfer of Note and Lien.

My understanding is that the underlying promissory notes related deeds of trust have not been transferred and assigned to ART by Swartz & Brough, Inc.  If I am mistaken and those promissory notes and related deeds of trust have been transferred and assigned to ART, then the attached Transfer of Note and Lien will not need to be executed and instead the instruments assigning promissory notes and related deeds of trust will need to be described in the attached Collateral Transfer of Note and Lien.  Also, in connection with the delivery of each Collateral Transfer of Note and Lien and the related underlying promissory notes and deeds of trust it will be necessary for the underlying promissory note to be endorsed by ART to ANB's order.

To evidence ART's understanding and agreement to the terms and conditions set forth above, please sign this letter in the space provided below and return it to me.  If you have any questions or comments please do not hesitate to call.

Regards,

AMARILLO NATIONAL BANK

Craig L. Sanders, Its Executive Vice President

2

10/26/2009

**AGREED:**

Andrew M. Swartz, President of Swartz & Brough, Inc.
ART Mortgage No. III, LTD's General Partner

xc:    Don D. Sunderland

3